UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK           FOR ONLINE PUBLICATION ONLY
----------------------------------------------------------------- X
ANTOINE MILLER                          :
02-A-1997                               :
                                        :
                   Petitioner,          :
                                        :       MEMORANDUM
        - against -                     :       AND ORDER
                                        :
GARY GREENE, SUPT.                      :       CV-05-3131 (JG)
                                        :
                   Respondent.          :
----------------------------------------------------------------- X

A P P E A R A N C E S :

    ANTOINE MILLER
        Inmate Number 02A1977
        Great Meadow Correctional Facility
        Box 51
        Comstock, New York  12821
        Petitioner *Pro se*

    CHARLES J. HYNES
        District Attorney
        Kings County
    By: Leonard Joblove
        Seth M. Lieberman
        Assistant District Attorneys
            of Counsel
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

Antoine Miller petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, having been convicted in the Supreme Court of New York, Kings County, of murder in the first and second degrees and sentenced to consecutive terms of imprisonment of twenty years to life and fifteen years to life. Oral argument of the petition was held by telephone conference this morning, October 25, 2005.

For the reasons set forth below, I deny the petition.

BACKGROUND

The evidence at trial established that Miller was one of two shooters in an attempted-robbery-turned-double-murder at 640 Blake Avenue, a bodega in Brooklyn. The other shooter, Bruce Jefferys, confessed to the crimes, pleaded guilty, and identified Miller as his partner in the crimes. Miller defended on the ground of mistaken identity.

Jefferys admitted killing Fabio Tavera, a clerk in the front of the store. He testified at Miller's trial that Miller shot and killed Eddy Rodriguez, the store's second clerk, in the rear of the store. Two other people were in the store at the time: William Juarbes and Monique Bartley. Whether Juarbes was a participant or a passerby is unclear, but he testified that he was in the store at the time of the attempted robbery, that he knew Miller well, and that Miller was a participant in the robbery. As for Bartley, shortly after the robbery she gave the police a general description of both perpetrators — race, sex, and approximate height, weight, and age — and was able to identify Jefferys from a photographic array. Bartley never attempted to identify the shooter from the rear of the store, however, because she "didn't really notice" him or "see[] what [he] looked like." Tr. 361.* When asked "to describe that person" more specifically to the jury, Bartley responded, "I couldn't do that" because when she saw him, he had his back to her, leaning over and looking into a soda case. *Id*. The prosecutor did not ask Bartley whether the man from the rear of the store, whose face she had not seen, was in the courtroom.[1]

---

\* "Tr." refers to the page of the trial transcript.

[1] At oral argument, Miller mistakenly contended that the trial judge excluded evidence of Bartley's out of court description of the man she saw in the back of the store, which description Miller stated does not match his physical characteristics. The trial transcript reflects that, over the prosecution's objection, Miller's counsel was

2

On cross-examination, however, Miller sought to introduce Bartley's prior out-of-court identification of Jefferys and to ask Bartley whether she could identify Miller as the shooter from the rear of the store. The trial court excluded the evidence as irrelevant, stating as follows: "she ... said from the get-go I can't tell you who the person was; all right?" Tr. 401.

When the case was submitted to the jury, the court gave the jurors an annotated verdict sheet. Under the first degree murder count, the verdict sheet included the words, "Intentional in the course of a robbery; Eddy Rodriguez." The four second degree murder counts were annotated as follows: (1) "Intentional; Eddy Rodriguez"; (2) "Depraved indifference; Eddy Rodriguez"; (3) "Felony murder; Eddy Rodriguez"; (4) "Felony murder; Fabio Tavera." Although Miller did not object to the annotations accompanying the second degree murder counts, which were by no means complete recitations of the applicable law, he objected to the notation accompanying the first degree murder count on the ground that it did not include the requirement that the defendant have been over 18 years old at the time of the offense. Tr. 517. The court declined to amend the verdict sheet.

---

permitted to inquire of Bartley whether she recalled "giving [the police] a description that night, May 18th, at the precinct of the man that was by the refrigerator?" Tr. 402. Bartley testified she did not recall the prior description, despite counsel's attempts to refresh her recollection. Tr. 403-04. Again over the prosecution's objection, however, Detective Murnane subsequently testified that he had spoken with Bartley that night and that she told him "she saw a male black by the soda cooler who was about nineteen to twenty-one years of age, six-foot-two, and a hundred an ninety pounds." Tr. 413. At summation, Miller's counsel reiterated the point:

> [Bartley] describes the man in the back to the police that night .... The night of the incident when supposedly her memory is fresh in her mind, she describes a male Black, nineteen to twenty-one, six-foot-two, a hundred and ninety pounds .... Antoine ... was almost twenty-five at the time. I had him stand up and exhibit himself to you. The reason for that was so you could get a look at him, you can judge for yourself if he fits that description. Tr. 483-84.

Miller thus had ample opportunity to persuade the jury Bartley's out-of-court description was sufficiently different from his actual appearance to create a reasonable doubt as to whether he was the person Bartley saw. The jury found the prosecution had met its burden.

Miller was convicted of first degree murder of Rodriguez and second degree murder (i.e., felony murder) of Tavera. As mentioned, he received consecutive sentences totaling 35 years to life. On appeal, Miller argued that (1) the trial court denied him his right to present a defense under the Constitution of the United States by improperly limiting his counsel's cross-examination of a witness for the prosecution; and (2) the verdict sheet the trial court submitted to the jury contained annotations that were incomplete, thereby depriving him of due process. The Appellate Division rejected both of these arguments and affirmed Miller's convictions. *People v. Miller*, 771 N.Y.S.2d 710 (2d Dep't 2004). In a brief order, the court found that "[t]he trial court properly limited defense counsel's cross-examination of" Bartley, and that the challenge to the annotated verdict sheet was "partially unpreserved for appellate review" and, "[i]n any event, ... without merit." *Id*. The New York Court of Appeals denied review on May 27, 2004. *People v. Miller*, 2 N.Y.3d 803 (2004). Miller did not seek direct review in the United States Supreme Court, nor did he seek collateral review in the courts of New York. He timely petitioned this court for a writ of habeas corpus on June 14, 2005.

DISCUSSION

A. <u>The AEDPA Standard</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

4

Supreme Court of the United States."[2] 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 1175 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 124 S. Ct. 1, 4

---

[2] Habeas relief is also warranted where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). That subsection is not relevant here.

(2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."); *Wiggins*, 539 U.S. at 520-21 (same). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S. C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

B.   Miller's Claims

    1.   The Cross-Examination of Bartley

Miller contends that "by refusing to allow [Bartley] to testify (A) about her prior identification of [Jefferys], and (B) whether she could make an in-court identification of [Miller], the court deprived [him] of his constitutional right to present a defense." As Miller correctly points out, the Constitution of the United States guarantees every defendant in a criminal case the right to cross-examine the witnesses against him, a right that is "implicit in the constitutional

6

right of confrontation, and helps assure the accuracy of the truth-determining process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

As the Supreme Court in *Chambers* explained, however, the right of cross-examination "is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id*. For example, "trial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Simply put, trial courts are not constitutionally bound to admit irrelevant or cumulative evidence.

Here, the evidence Miller sought to introduce was, at worst, wholly irrelevant and intended to confuse the jury and, at best, marginally relevant but wholly cumulative. After Bartley had testified she could not describe the man in the rear of the store and that she had not seen his face, it is hard to imagine what further benefit Miller would have obtained by asking whether she could point him out in the courtroom. That Bartley was previously able to identify Jefferys lends no probative value to Miller's proffer; Bartley had never indicated that she could identify the man in the back by sight, nor had she identified any potentially distinctive characteristic, such as his voice, that might have allowed her to identify him in some other manner. Having seen the man in the front of the store well enough to identify him made her no more or less likely to have seen the man in the back of the store just as well. *See* Fed. R. Evid. 401. In short, I agree with the trial court's decision. At a minimum, the exclusion of this evidence as irrelevant did not violate "clearly established Federal Law." 28 U.S.C. § 2254(d)(1).

2. <u>The Verdict Sheet</u>

Miller's second argument is that the verdict sheet, by failing to include all the elements of first degree murder — including specifically that the defendant was over the age of 18 at the time of the crime, that the defendant pulled the trigger, and that the defendant's conduct caused the victim's death — deprived him of his right to a fair trial under the Due Process Clause of the Fourteenth Amendment. This claim is without merit. Taken as a group, the short notations on the verdict sheet were plainly included in order to assist the jury in distinguishing the numerous counts of murder with which Miller was charged. The notations were not suggestive in any way, nor could they possibly have been mistaken by the jury as anything more than a shorthand reference to the actual instructions the judge gave orally, which the parties agree were complete and proper. These innocuous — indeed, helpful — notations did not "so infect[] the entire trial that the resulting conviction violates due process." *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990).*

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because Miller has failed to make a substantial showing that he was deprived of his constitutional rights, *see* 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

So ordered.

John Gleeson, U.S.D.J.

---

* Because I reject the claim on the merits, I need not address the consequences of the state court's alternative holding that it was "partially unpreserved for appellate review." *People v. Miller*, 771 N.Y.S.2d 710 (2d Dep't 2004).

Dated:	Brooklyn, New York
	October 25, 2005